IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JOE E. DANIEL,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | **Civil Action No. 3:02-CV-2758-P** |
| **v.** | § | |
| | § | |
| **COMMISSIONER OF SOCIAL SECURITY,** | § | |
| | § | |
| **Defendant.** | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of Title 28, United States Code, § 636(b)(1)(B), and an *Order* of

the District Court in implementation thereof, the subject cause has been referred to the undersigned

United States Magistrate Judge for recommendation.  Before the Court are *Plaintiff's Motion for*

*Summary Judgment*, filed July 22, 2003; *Commissioner's Cross-Motion for Summary Judgment*,

filed September 18, 2003; and *Plaintiff's Reply Brief*, filed November 24, 2003.  Having reviewed

the evidence of the parties in connection with the pleadings, the Court recommends that *Plaintiff's*

*Motion for Summary Judgment* be **GRANTED**, *Commissioner's Cross-Motion for Summary*

*Judgment* be **DENIED**, and the case be remanded to the Commissioner for further proceedings.

## I. BACKGROUND[1]

### A.    *Procedural History*

Joe E. Daniel ("Plaintiff") seeks judicial review of a final decision by the Commissioner of

Social Security ("Commissioner") denying his claim for disability benefits under Title II of the

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

1

Social Security Act. On January 20, 2000, Plaintiff filed an application for disability benefits. (Tr. at 37-39.) Plaintiff claimed he was disabled due to insulin-dependant diabetes, severe neuropathy in hands, legs, and feet, equilibrium problems, low blood pressure, and blackouts. (Tr. at 60.) Plaintiff's application was denied initially and upon reconsideration. (Tr. at 12.) Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 30.) A hearing, at which Plaintiff personally appeared and testified, was held on June 21, 2000. (Tr. at 241-61). On June 28, 2000, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 9-18.) The Appeals Council denied Plaintiff's request for review, concluding that the contentions raised in Plaintiff's request for review did not provide a basis for changing the ALJ's decision. (Tr. at 4-6.) Thus, the ALJ's decision became the final decision of the Commissioner. (Tr. at 4.) Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g) on December 24, 2002.

**B.**     ***Factual History***

   **1.**     **Age, Education, and Work Experience**

Plaintiff was born on March 5, 1965. (Tr. at 37.) At the time of the hearing before the ALJ he was 37 years old. (Tr. at 244.) He graduated high school. *Id.* His past relevant work experience included work as an aircraft maintenance mechanic. *Id.* Plaintiff last worked in June 2004. *Id.*

   **2.**     **Medical Evidence**

Although Plaintiff's alleged onset of disability is June 14, 1994, the medical evidence in the record begins on September 24, 1995. On that date, Plaintiff was admitted to the Irving Healthcare System with diabetic ketoacidosis. (Tr. at 68-76.) Plaintiff's symptoms included nausea and vomiting. (Tr. at 74.) Plaintiff reported that he had long-standing insulin-dependent diabetes

2

mellitus. (Tr. at 72.) Plaintiff reported no other recent medical problems and stated that he had been in good general health. (Tr. at 72, 74.) Plaintiff's symptoms resolved with treatment and he was discharged from the hospital on September 29, 1995. (Tr. at 68.)

Plaintiff was subsequently seen at the Irving Healthcare System Howard Center for Behavioral Medicine for counseling related to management of diabetes. (Tr. at 86.) On October 3, 1995, a counselor noted that Plaintiff was unable to control his appetite and was resistant to switching to alternative foods. (Tr. at 86.) Plaintiff reported that he had experienced tingling and numbness in his hands and feet, as well as leg cramps, over the previous six months. (Tr. at 81.) Additionally, Plaintiff reported weight loss prior to his admission to the hospital. (Tr. at 79.) Treatment notes on October 4, 1995, indicate that Plaintiff was more open to change with respect to his diet. (Tr. at 84.) Plaintiff did not continue counseling as advised. (Tr. at 83-84.)

The next evidence of medical treatment in the record is that of a visit to David K. Livingstone, M.D. of the Medical and Surgical Clinic of Irving for a recheck of severe diabetes on June 6, 1997. (Tr. at 227.) It was noted that his blood sugar levels were still high after taking multiple doses of insulin daily. *Id.* At that time, Plaintiff was taking amitriptyline for neuropathy. *Id.* Plaintiff was reminded of the need to carefully examine his feet. *Id.* Dr. Livingstone diagnosed insulin-dependent diabetes mellitus with neuropathy. *Id.*

On January 27, 1998, Plaintiff was seen in the emergency clinic of the Medical and Surgical Clinic of Irving. (Tr. at 226.) The treatment notes indicate that Plaintiff had some problem with his toenails and that he had numbness and tingling in his feet. *Id.* Additionally, he had experienced impotence for two to three years. *Id.*

At a visit on September 25, 1998, Dr. Livingstone noted that although Plaintiff had lost

3

weight, his weight appeared stable at that time. (Tr. at 224.) Plaintiff had discontinued treatment with amitriptyline for neuropathy, and his feet were starting to hurt. *Id.* Plaintiff also experienced nocturia due to his high sugar levels. *Id.* Dr. Livingstone advised Plaintiff to cut back slightly on his food intake. *Id.*

Plaintiff was treated for a boil on his hip on April 5, 1999. (Tr. at 223.) The boil was incised and drained, and Dr. Livingstone prescribed antibiotics. *Id.* At that visit, Dr. Livingstone noted that Plaintiff's blood sugar levels had been high. *Id.*

On June 8, 1999, Plaintiff presented to Dr. Livingstone with swelling and bruising on his left foot following a fall at home. (Tr. at 222.) Dr. Livingstone noted that Plaintiff still suffered from substantial neuropathy in his feet but could feel the pressure and swelling of the current injury. *Id.* Plaintiff's blood sugar was out of control. *Id.*

On July 15, 1999, Plaintiff was examined by Joseph L. Milburn, Jr., M.D. for burning pain and numbness in his feet. (Tr. at 87.) Plaintiff had recently developed ulcers on the heels of both feet. *Id.* Additional symptoms included fatigue, severe polydipsia, polyuria, nocturia, worsening lower extremity edema, and diarrhea. *Id.* Dr. Milburn noted that Plaintiff's distal pulses were decreased. (Tr. at 88.) Plaintiff's deep tendon reflexes were trace at the biceps and knees and absent at the ankles. *Id.* Touch to the soles was also decreased. *Id.* Dr. Milburn diagnosed Type I diabetes mellitus with peripheral neuropathy, bilateral heel ulcers, background diabetic retinopathy, and possible diabetic gastroenteropathy. *Id.*

Plaintiff was admitted to Baylor Medical Center at Irving on July 22, 1999, for bilateral heel ulcers with associated cellulitis. (Tr. at 90.) Samuel Nava, D.P.M. evaluated Plaintiff's feet. (Tr. at 95-96.) Dr. Nava noted the absence of sharp-dull sensation to both feet. (Tr. at 95.) He

4

diagnosed a right diabetic foot ulcer with cellulitis and a left diabetic foot ulcer. (Tr. at 96.) Dr. Nava found that Plaintiff's dorsalis pedis and posterior tibialis pulses were diminished. (Tr. at 95.) While hospitalized, Plaintiff underwent surgical debridement of his heel ulcers and was prescribed IV antibiotics. (Tr. at 90, 97.) S. Mohsin Shah, M.D. evaluated Plaintiff's symptoms of diarrhea. (Tr. at 92-93.) Dr. Shah noted that Plaintiff had lost 78 pounds in the previous five years. (Tr. at 92.) Dr. Shah's impression was that Plaintiff's diarrhea could be related to diabetic gastroenteropathy. (Tr. at 93.) Plaintiff was discharged from the hospital on August 2, 1999. (Tr. at 90.) Physical therapy notes indicate that Plaintiff was unable to walk upon discharge from the hospital but was able to do some walking by August 14, 1999. (Tr. at 112, 119.)

Plaintiff was seen by Dr. Shah as an outpatient at the Medical and Surgical Clinic of Irving on August 11, 1999. (Tr. at 221.) The treatment notes indicate that Plaintiff had regained 15 pounds but continued to have diarrhea. *Id.*

On August 17, 1999, Plaintiff was seen by Dr. Milburn for a follow up of Type I diabetes complicated by diabetic retinopathy and neuropathy. (Tr. at 207.) Dr. Milburn's notes indicate that Plaintiff's bilateral heel ulcers were still healing. *Id.* Plaintiff also complained of continuing diarrhea, probably due to diabetic gastroenteropathy. *Id.* By September 20, 1999, the ulcers on Plaintiff's heels had healed. (Tr. at 206.) Plaintiff later faxed a copy of his recent blood sugar levels to Dr. Milburn, who noted that Plaintiff's glucose control was better but that he still had wide swings. *Id.*

On October 26, 1999, Plaintiff went to the Baylor Medical Center at Irving emergency room after losing consciousness. (Tr. at 167.) The treating physician opined that Plaintiff's symptoms were due to hypoglycemia caused by too much insulin. (Tr. at 166-67.)

5

Plaintiff was again seen by Dr. Milburn on December 13, 1999. He complained of fatigue and low blood pressure upon standing. (Tr. at 204.) Plaintiff's blood pressure was 90/66 when sitting and 72/54 when standing. *Id.* Plaintiff claimed to have lost about eight pounds since his previous visit. *Id.* Physical examination revealed Plaintiff's "feet were cool, somewhat violaceous in coloration and the pulses were decreased." *Id.* Dr. Milburn's assessment stated that Plaintiff suffered from Type I diabetes mellitus with retinopathy and neuropathy. *Id.* In addition, Dr. Milburn found that Plaintiff had "probable autonomic neuropathy with orthostatic hypotension." *Id.* Dr. Milburn ordered lower extremity arterial doppler studies. *Id.*

Plaintiff was admitted to the Baylor Medical Center at Irving on February 7, 2000, after his date last insured, with diabetic ketoacidosis. (Tr. at 122.) The discharge summary indicates that Plaintiff had suffered from painful neuropathy for the previous three years. *Id.* Plaintiff also reported fainting spells for the prior six months, approximately two to three times a week. (Tr. at 125.) An examination by Cherie O'Brien, M.D., found muscle wasting, absent reflexes in the lower extremities, diminished pin prick sensitivity above the knees, and diminished temperature sensitivity in the lower extremities. (Tr. at 126.) Dr. O'Brien diagnosed diabetic autonomic insufficiency secondary to neuropathic changes to the autonomic nervous system. *Id.* Plaintiff was discharged from the hospital on February 13, 2000.( Tr. at 122.)

On March 17, 2000, Plaintiff was seen by Maria N. Biard, M.D. (Tr. at 203.) Dr. Biard noted that Plaintiff had diabetes with severe neuropathy, extending from his toes to his waist. *Id.* Plaintiff had been seeing a Dr. O'Brien for his neuropathy but, for insurance reasons, had to change physicians. *Id.* Dr. Biard noted that Plaintiff appeared to be homebound and unable to work because he could not walk. *Id.* Her impression was that Plaintiff suffered from severe diabetes with end

6

organ damage. *Id.*

Plaintiff was examined by Diane Anderson, FNPC on June 6, 2000. (Tr. at 201.) Ms. Anderson noted he was a "brittle diabetic with end-stage disease with neuropathy from the waist down." *Id.* Plaintiff complained of numbness from the waist down and numbness in his hands. *Id.* Ms. Anderson found that Plaintiff had virtually no pulses in his extremities. *Id.* "Lower extremities were cold to touch, no hair growth from mid shin down." *Id.* Ms. Anderson concluded that Plaintiff suffered from insulin dependant diabetes mellitus and severe peripheral neuropathy.

### 3.     Hearing Testimony

A hearing was held before the ALJ on June 21, 2002. (Tr. at 241.) Plaintiff appeared personally and was represented by a non-attorney representative. *Id.* Plaintiff testified that he was 37 years old and had graduated from high school. (Tr. at 244.) He was last employed on June 10, 1994 as a mechanic doing aircraft refurbishing. *Id.* Plaintiff stated that he stopped working due to complications of diabetes. *Id.* He claimed his legs swelled while standing and that he had problems with equilibrium. *Id.*

Plaintiff testified that he had lost 75 pounds since 1994. (Tr. at 245.) He stated that he was required to spend the majority of the day in bed with his feet elevated due to pain and neuropathy. (Tr. at 246.) He had little feeling in his feet and frequently lost his balance. (Tr. at 250.) When feeling well, Plaintiff assembled model cars for 20 to 30 minutes at a time. (Tr. at 255.) He was unable to do any housekeeping or shopping. *Id.*

Plaintiff opined that three years previously he could stand 45 minutes to an hour at a time before needing to elevate his legs due to swelling and pain. (Tr. at 251-52.) He noted that it could take 8 to 16 hours for the swelling to go down. (Tr. at 252.) He could only walk short distances

7

without assistance due to problems with equilibrium and pain in his legs. (Tr. at 252-53.) Plaintiff

testified that since 1997 or 1998 he used a wheelchair whenever he needed to travel further than 25

feet. (Tr. at 249.) Plaintiff was only able to sit for 25 to 40 minutes before needing to elevate his

legs. (Tr. at 253.) He was only able to carry 10 pounds. (Tr. at 254.) Plaintiff stated that for the

previous five years his daily activities were limited to going from the bed to the kitchen to the couch.

(Tr. at 256-57.)

## C.   *ALJ's Findings*

The ALJ denied Plaintiff's application for benefits by written opinion issued on June 28,

2002. (Tr. at 9-22.)    The ALJ noted that Plaintiff was last insured for disability insurance benefits

under Title II on December 31, 1999. (Tr. at 12.) The ALJ found that Plaintiff had not engaged in

substantial gainful activity since the alleged onset of disability, June 14, 1994. (Tr. at 13.)  In

addition, he found that as of the date Plaintiff was last insured, Plaintiff had severe insulin-dependent

diabetes mellitus with neuropathy and orthostatic hypotension, and osteoarthritis. *Id.* However, the

ALJ concluded that Plaintiff's impairments did not meet or equal a listed impairment as of that date.

*Id.* Rather, the ALJ found that Plaintiff's condition "dramatically worsened in 2000," leading to

hospitalization in February 2000 and a treating source opinion in June 2000 that his condition was

of listing-level severity. (Tr. at 15.) However, because this evidence dated after Plaintiff's date last

insured, the ALJ concluded that it could not be the basis for a finding that Plaintiff was disabled as

of December 31, 1999. *Id.*

The ALJ found that although Plaintiff had medically determinable impairments which could

reasonably cause the symptoms alleged, Plaintiff's testimony was not credible nor reasonably

supported by the objective medical evidence to the extent that he alleged he was completely unable

8

to perform any work activity prior to December 31, 1999. (Tr. at 15.)

The ALJ concluded that Plaintiff retained the residual functional capacity to perform the exertional and nonexertional requirements of a full range of sedentary work prior to December 31, 1999. (Tr. at 16.) Although Plaintiff was unable to perform his past relevant work as an aircraft mechanic, the ALJ considered Plaintiff's residual functional capacity and relevant vocational characteristics and concluded that the medical-vocational guidelines directed a finding of not disabled. (Tr. at 17.)

## II. ANALYSIS

### A.    *Legal Standards*

#### 1.    <u>Standard of Review</u>

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-344 (5th Cir. 1988).

**2.      Disability Determination**

To be entitled to social security benefits, a claimant must prove that he or she is disabled as

defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638,

640 (5th Cir. 1988).  The definition of disability under the Social Security Act is "the inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*,

954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant
is disabled:

1.      An individual who is working and engaging in substantial gainful activity will not
        be found disabled regardless of medical findings.

2.      An individual who does not have a "severe impairment" will not be found to be
        disabled.

3.      An individual who "meets or equals a listed impairment in Appendix 1" of the
        regulations will be considered disabled without consideration of vocational factors.

4.      If an individual is capable of performing the work he has done in the past, a finding
        of "not disabled" must be made.

5.      If an individual's impairment precludes him from performing his past work,
        other factors including age, education, past work experience, and residual functional
        capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability.

*Leggett*, 67 F.3d at 564.  The analysis terminates if the Commissioner determines at any point during

the first four steps that the claimant is disabled or is not disabled. *Id.*  Once the claimant satisfies

his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## B.    *Issues for Review*

Plaintiff presents the following issues for review:

(1)    The ALJ erred in requiring contemporaneous medical opinion evidence to establish the onset date of Plaintiff's disability; and

(2)    The ALJ failed to apply the proper legal standards when he failed to seek medical expert testimony to infer the onset date of Plaintiff's disability.

## C.    *Issue One: Medical Opinion Evidence*

Plaintiff contends that the ALJ "applied an inappropriate legal standard in requiring medical opinion evidence dated on or before December 31, 1999 documenting that [Plaintiff] retained an RFC for less than sedentary work, thereby preventing gainful employment." (P's Br. at 12.)

"A claimant is eligible for benefits only if the onset of the qualifying medical impairment [or combination of impairments] began on or before the date the claimant was last insured." *Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000). It is the claimant's burden to establish a disabling condition before the expiration of insured status. *Id.* In establishing a claimant's date of onset of disability, three factors are considered: (1) the individual's allegation; (2) work history; and (3) medical evidence. SSR 83-20. While all three factors are considered, if the individual's claimed

11

date of onset or date of work stoppage is not consistent with the medical evidence, those factors are not considered significant. *Id.* However, the absence of medical opinion evidence showing disability dated prior to a claimant's date last insured is not sufficient in itself to support a finding that the claimant was not disabled when there is medical evidence in the record indicating that the claimant may have been disabled prior to that date. *Spellman v. Shalala*, 1 F.3d 357, 363 (5th Cir. 1993); *Ivy v. Sullivan*, 898 F.2d 1045, 1048-49 (5th Cir. 1990).

In the instant case, the ALJ reviewed the objective medical evidence in the record to determine whether it contained information indicating Plaintiff's functional limitations. The ALJ noted that although the record showed that Plaintiff did have neuropathy in his feet prior to his date last insured, December 31, 1999, there was no contemporaneous objective medical evidence showing he was unable to walk short distances, had significant functional limitations affecting his hands, was unable to sit, or was required to keep his feet elevated. (Tr. at 16-17.) Thus, the ALJ concluded, "there is simply no objective medical evidence that the claimant suffered any functional limitations which would have prevented him from being able to perform a full range of sedentary work on a continuing and sustained basis" through his date last insured. (Tr. at 17.) Contrary to Plaintiff's assertion, the ALJ did not base his decision on the lack of contemporaneous medical *opinion* evidence of Plaintiff's disability. Rather, the ALJ found a lack of contemporaneous medical evidence consistent with Plaintiff's claims of disability. Because the ALJ's finding of not disabled was not based on the absence of contemporary medical opinion evidence setting forth Plaintiff's functional limitations, the Court finds no error.

**D.      Issue Two: Medical Expert Testimony**

Plaintiff contends that the ALJ failed to apply the proper legal standards when he failed to seek medical expert testimony to infer the onset date of Plaintiff's disability, as required by SSR 83-20. (Pl. Br. at 8.)

Social Security rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 422.406(b)(1). SSR 83-20 sets forth guidelines for determining the onset date of a claimant's disability:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomology of the disease process.

SSR 83-20. When precise evidence of the onset date of disability is unavailable, determination of that date "depends on an informed judgment of the facts in the particular case." *Id.* "This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred." *Id.* In other words, when the medical evidence is ambiguous with regard to the disability onset date, the Commissioner must consult a medical expert. *Spellman*, 1 F.3d at 363-64.

1.      Applicability of SSR 83-20 Absent a Finding of Disability

The Commissioner contends that SSR 83-20 is not applicable in this case because the ALJ made no finding of disability at any time, either before or after Plaintiff's date last insured; therefore, the ALJ was not required to call a medical expert to infer an onset date. (Def.'s Br. at 4-5.)

Courts have considered and rejected previous arguments by the Commissioner that SSR 83-20 is inapplicable, and a medical advisor therefore not required, where the ALJ determines that a claimant was not disabled *before* the expiration of insured status. *See Grebenick v. Chater*, 121 F.3d 1193, 1200–01 (8th Cir. 1997); *Gutka v. Apfel*, 54 F. Supp. 783, 787-88 (N.D. Ill. 1999); *Gullett v. Chater*, 973 F. Supp. 614, 623-34 (E.D. Tex. 1997). Although that was the specific argument before the court in *Gullett*, the facts of that case led the court to also consider whether a finding of disability *after* a claimant's date last insured was required in order to trigger the protections of SSR 83-20. There, as here, the medical evidence before the Commissioner indicated that the plaintiff was disabled after his date last insured from a slowly progressive impairment (post-polio syndrome), but the Commissioner made no formal finding of disability. *Id.* at 624.

The *Gullett* court rejected the contention that SSR 83-20 only applied when the ALJ made a finding of disability, whether before or after date last insured, stating:

> The Commissioner misconstrues the nature of the directive contained in SSR 83-20. In many instances, a formal finding is made that the onset of a disability occurred prior to expiration of the claimant's insured status, and the only contested issue is the establishment of the onset date of disability for purposes of determining when disability benefits began to accrue within the insured period. However, SSR 83-20 also recognized that the onset date of disability is relevant in a different circumstance: where evidence indicates that a claimant was disabled after his insured status expired, and the contested issue is the establishment of the onset date of disability for purposes of determining whether the claimant is even eligible for benefits. In this latter circumstance, to trigger the protections of SSR 83-20, *a formal finding by the Commissioner of* [the plaintiff's] *disability **after** [last date insured] is not required.* To impose this requirement would create an unjust Catch-22 dilemma for [the plaintiff] and others in his position. [The plaintiff] would not be able to avail himself of a medical advisor to show that he was disabled before [his date last insured] unless the ALJ first found he was disabled after [his date last insured], but the Commissioner contends that the ALJ is not required to make any determination concerning disability after [the date last insured].

*Id.* (emphasis added). The *Gullett* court concluded that "as long as the medical evidence indicates

14

that [the plaintiff] was disabled from a slowly progressive disabling impairment, even after [the last

date insured], and the evidence is ambiguous as to whether the onset of the disability was on or

before [the last date insured], a medical advisor must be utilized." *Id.* at 624.

  *Gullett's* conclusion that no finding of disability is required in order to trigger the protections

of SSR 83-20 is consistent with the holdings in the other cases which considered the Commissioner's

arguments that a finding of disability *before* last date insured was required.  In *Grebenick,* the court

similarly found that where the evidence is ambiguous regarding the possibility that the onset date

of disability occurred before the expiration of insured status and a retroactive inference is necessary,

SSR 83-20 requires the ALJ to obtain the opinion of a medical expert.  121 F.3d at 1200-01.  In

*Gutka*, the court found that where the evidence at the hearing establishes that the applicant is then

suffering from a disability, the ALJ must necessarily determine whether the onset date is prior to the

last insured date, and SSR 83-20 thus requires consultation with a medical advisor.  54 F. Supp. at

787-88 .  *But see Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997) (agreeing, without discussion,

with the Commissioner's argument that SSR 83-20 "applies only when there has been a finding of

disability and it is necessary to determine when the disability began," and stating that "the only

necessary inquiry is whether the claimant was disabled prior to the expiration of his insured status").

  The Commissioner relies on *Harris v. Massanari*, 2001 WL 770980 (N.D. Tex. July 3, 2001)

(Bleil, J.) in support of the argument that SSR 83-20 is not applicable absent a finding of disability.

In *Harris*, the plaintiff claimed disability due to multiple sclerosis and alleged that the onset date of

her disability was prior to her date last insured.  *Id*. at *1.  The court found that the ALJ did not err

in failing to obtain the services of a medical expert to determine a disability onset date because the

plaintiff had not "established that she met a listed impairment or otherwise met the definition of

15

'disabled' as defined by the Social Security Act at anytime *before* the expiration of her insured status." *Id.* at *4 (emphasis added). In so doing, the court expressly noted that, according to the medical evidence, the plaintiff's "condition was under good control and clinically stable during the relevant time period, and no physician has issued a statement indicating that [the plaintiff] was disabled before the expiration of her insured status." *Id.* The court thus implicitly found that the medical evidence was not ambiguous and clearly indicated that the plaintiff had not been disabled during the relevant time period. The finding that no medical expert was required where the evidence is unambiguous is entirely consistent with the holdings of *Gullett* and *Grebenick.* *See Gullett,* 973 F. Supp. at 624 (finding that the Commissioner did not abuse her discretion in failing to consult a medical advisor where the evidence in the record was not ambiguous regarding the onset date of disability); *Grebenick,* 121 F.3d at 1200-01 (agreeing with the district court that the medical evidence was unambiguous, thereby obviating the need for a medical advisor). The Commissioner's reliance on *Harris* is unavailing.

The Court agrees with the reasoning and conclusion in *Gullett* that the applicability of SSR 83-20 does not hinge upon a finding of disability. As noted therein, the Commissioner has no obligation to evaluate evidence of disability after date last insured and to make a determination of disability thereupon because such evidence does not entitle a claimant to benefits. *See Brophy v. Halter,* 153 F. Supp.2d 667, 671 (E.D. Pa.. 2001) (finding no error in the ALJ's failure to consider evidence obtained after the claimant's date last insured); *Rumphol v. Barnhart,* 2003 WL 22424723, *10 (N.D. Ill. Oct. 22, 2003) (holding that medical evidence of disability which fell outside the relevant time period did not require consideration by the ALJ). Because no such finding would be made, the ALJ would have no duty to call a medical expert to establish the onset date of disability.

16

A claimant whose disability was clearly established shortly after his date last insured, as in this case, would be unable to obtain the assistance of a medical expert to prove that the disability began prior to his date last insured, even in cases where the medical evidence of disability at an earlier date was ambiguous. The language in the introduction to SSR 83-20 "explains that the determination of the onset date is critical because 'it may affect the period for which the individual can be paid and *may even be determinative of whether the individual is entitled to or eligible for any benefits.*'" *Grebenick*, 121 F.3d at 1200 (emphasis original). Denial of the protection of SSR 83-20 merely because the Commissioner was not required to make a finding of disability after the date last insured would fly in the face of the clear intent of the rule.

For the foregoing reasons, the Court finds that where there is evidence of disability after a claimant's date last insured and the medical evidence prior to the date last insured is ambiguous as to the onset date of disability, SSR 83-20 requires the Commissioner to obtain the opinion of a medical expert to ascertain the onset date, even if the Commissioner has made no finding of subsequent disability.

### 2.     Ambiguity of Medical Evidence of Disability Onset Date

Having found that SSR 83-20 is applicable in situations where there is evidence of disability after a claimant's date last insured and the medical evidence prior to the date last insured is ambiguous as to the onset date of disability, the Court next considers whether the medical evidence dated prior to Plaintiff's date last insured is ambiguous regarding the onset of Plaintiff's disability. If there is ambiguity, SSR 83-20 requires the Commissioner to call a medical expert to assist in the determination of an onset date. Plaintiff asserts that the medical evidence regarding the onset of his disability is ambiguous. (Pl.'s Br. at 16-18.) Defendant claims that substantial evidence supports

17

the finding that Plaintiff's diabetes was not disabling prior to his date last insured. (Def.'s Br. at 6.)

The record in this case is replete with evidence of Plaintiff's deteriorating condition due to complications of diabetes mellitus. The medical evidence indicates that Plaintiff was originally diagnosed with neuropathy as early as June 6, 1997, and that his symptoms continued to worsen throughout the period in which he was insured. (Tr. at 87, 90, 122, 204, 224, 227.) By December 13, 1999, Plaintiff's "feet were cool, somewhat violaceous in coloration and the pulses were decreased." (Tr. at 204.) Plaintiff suffered from episodes of syncope from June 8, 1999, deteriorating such that by February 7, 2000, he stated that for the previous six months he had two to three episodes of fainting per week. (Tr. at 122.) Plaintiff testified that since 1997 or 1998 he used a wheelchair whenever he needed to travel further than 25 feet. (Tr. at 249.) He also stated that since 1997 his daily activities were limited to going from the bed to the kitchen to the couch. (Tr. at 256-57.) Five weeks after his date last insured, Plaintiff was hospitalized and was found to have muscle wasting, absent reflexes in the lower extremities, diminished pin prick sensitivity above the knees, and diminished temperature sensitivity in the lower extremities. (Tr. at 126.) Eleven weeks after his date last insured, Plaintiff's treating physician opined that Plaintiff was unable to work because he could not walk. (Tr. at 203.)

It was the ALJ's opinion that Plaintiff's "condition clearly worsened significantly and rather rapidly after December 31, 1999..." (Tr. at 17.) After a thorough review of the record, the Court concludes that substantial evidence does not support this finding. The parties do not dispute that Plaintiff's diabetes was, and the evidence shows it to be, a slowly progressive impairment. Plaintiff's gradually worsening condition, as evidenced by the medical record, and the opinion of his treating physician that he was unable to work just eleven weeks after his date last insured create an

18

ambiguity as to the date of onset of disability. Because the date of onset of disability had to be inferred, SSR 83-20 requires that the Commissioner call on the services of a medical expert. Because the Commissioner did not seek the opinion of a medical expert to determine the onset date of Plaintiff's disability as required by SSR 83-20, substantial evidence does not support the finding that Plaintiff was not disabled prior to his date last insured. Therefore, the Court recommends that this case be remanded to the Commissioner to consult a medical expert to determine the onset date of Plaintiff's disability.

### III.   RECOMMENDATION

For the foregoing reasons, the Court recommends that *Plaintiff's Motion for Summary Judgment* be **GRANTED,** *Commissioner's Cross-Motion for Summary Judgment* be **DENIED**, and the case remanded for reconsideration in light of this opinion. In particular, the Commissioner should consult a medical expert to determine the onset date of Plaintiff's disability.

**SO RECOMMENDED**, on this the 22nd day of March, 2005.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992).  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE